UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LOGAN H. BECK, ) | CASE NO. 5:17CV754 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, ) | OF MAGISTRATE JUDGE |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Logan H. Beck ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") finding that he was not disabled and therefore not entitled to Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on July 21, 2017, Plaintiff asserts that the administrative law judge ("ALJ") failed to appropriately analyze Listing 12.05. ECF Dkt. #12. Defendant filed a response brief on August 21, 2017. ECF Dkt. #13. Plaintiff filed a reply brief on September 5, 2017. ECF Dkt. #14.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I.     PROCEDURAL HISTORY

Plaintiff received SSI benefits based upon disability as a child. ECF Dkt. #11 ("Tr.") at 13.[2] After Plaintiff turned eighteen, Defendant determined that he was no longer disabled as of July 1, 2014, under the rules for determining disability for adults. *Id.* at 80. Plaintiff's claim

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

was denied upon reconsideration. *Id.* at 118. After this denial, Plaintiff requested a hearing before an ALJ. *Id.* at 123. The hearing was held on December 4, 2015. *Id.* at 37. On February 16, 2016, the ALJ issued a decision concluding that Plaintiff was not disabled under the five-step sequential evaluation process. *Id.* at 10. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the February 16, 2016, decision issued by the ALJ stands as the final decision.

The instant suit was filed by Plaintiff on April 10, 2017. ECF Dkt. #1. On July 21, 2017, Plaintiff filed a brief on the merits. ECF Dkt. #12. Defendant filed a response brief on August 21, 2017. ECF Dkt. #13. Plaintiff filed a reply brief on September 5, 2017. ECF Dkt. #14.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence

Plaintiff turned eighteen on April 21, 2014. Tr. at 78. While attending high school, Plaintiff had an individualized education program ("IEP"). *Id.* at 365. Prior to turning eighteen, Plaintiff had a full-scale IQ of seventy-one, which placed him in the borderline range of cognitive ability. *Id.* at 287, 366. The accommodations Plaintiff received included small group testing, use of a calculator, and extended time for testing. *Id.* at 382. Although Plaintiff had a lengthy history of social, emotional, and behavioral problems that began in kindergarten, he had not displayed any significant behavioral problems in high school. *Id.* at 368. Plaintiff's IEP profile indicated that he presented as a somewhat quiet, but likeable and respectful young man, and noted that there were no concerns in the areas of communicative functioning, vision or hearing abilities, or fine and gross motor functioning. *Id.*

On May 20, 2014, Plaintiff reported that he could focus all day at school and on his homework, "getting out with friends frequently," and doing well in his family and peer relationships. Tr. at 277. Plaintiff and his mother denied any concerns regarding behavior or attention. *Id.* Upon examination, Plaintiff was cooperative with an eurythmic mood and full affect, and Plaintiff displayed: logical thought processes; clear speech; normal language; and intact cognition, including normal concentration, memory, and fund of knowledge. *Id.* at 278. The nurse practitioner examining Plaintiff diagnosed him with depressive disorder (not

otherwise specified), attention deficit disorder with hyperactivity, anxiety state (unspecified), and unspecified disturbance of conduct. *Id.*

On June 27, 2014, Katherine Fernandez, Psy.D., a state-agency non-examining doctor, opined that Plaintiff had borderline intellectual functioning that did not meet Listing 12.05 or any other listing. Tr. at 315-23. Dr. Fernandez further opined that Plaintiff had mild limitations in activities of daily living, mild difficulties in social functioning, and mild difficulties in maintaining concentration, persistence, or pace. *Id.* at 325.

In September 2014, Plaintiff continued to report that he could focus all day at school and was frequently going out with friends. Tr. at 331. Plaintiff's mother reported that he was having increased behavioral issues, anger, and irritability, and indicated that he was quick to become angry and explode. *Id.* The nurse practitioner examining Plaintiff observed that he was having a reoccurrence of previous symptoms, which had been well controlled for the prior year. *Id.* Upon examination, Plaintiff was cooperative with an euthymic mood but constricted affect, and displayed: logical thought processes; clear speech; normal language; and intact cognition, including normal concentration, memory, and fund of knowledge. *Id.* at 332. Plaintiff's medication was increased. *Id.*

On October 2, 2014, Plaintiff's mother reported that he was experiencing decreased anger and irritability since the increase in his medication. Tr. at 354. Plaintiff's mood was "much more stable," and he was less angry and explosive. *Id.* Plaintiff was going out with friends frequently and was doing well in his peer and family relationships. *Id.* Both Plaintiff and his mother denied any concerns regarding his behavior or attention. *Id.* Upon examination, Plaintiff was cooperative with euthymic mood and full affect, and displayed: logical thought processes; clear speech; normal language; and intact cognition, including normal concentration, memory, and fund of knowledge. *Id.* at 355. It was noted by the nurse practitioner that Plaintiff had a stable mood and was doing well. *Id.*

Also in October 2014, Leslie Rudy, Ph.D., another state-agency non-examining doctor, reviewed Plaintiff's medical records through September 2014 and opined that his impairments did not meet a listing. Tr. at 333-42, 349. Dr. Rudy opined that Plaintiff had mild restrictions in

-3-

activities of daily living, moderate difficulties in social functioning, and moderate difficulties maintaining concentration, persistence, or pace. *Id.* at 343. Further, Dr. Rudy opined that Plaintiff was markedly limited in interacting appropriately with the general public and moderately limited in getting along with coworkers and supervisors. *Id.* at 348.

In January, May, and September of 2015, Plaintiff attended follow-up appointments with the nurse practitioner that treated him in 2014. Tr. at 356, 358, 360. At these appointments, Plaintiff reported minimal anger and irritability since the increase in his medication, and his mood continued to be stable. *Id.* Plaintiff reported that he was going out with friends frequently and doing well in his peer and family relationships. *Id.* Both Plaintiff and his mother denied any concerns regarding behavior or attention. *Id.* Upon examination, Plaintiff was cooperative with an euthymic mood and full affect, and displayed: logical thought processes; clear speech; normal language; and intact cognition, including normal concentration, memory, and fund of knowledge. *Id.* at 357, 359, 361-62. The nurse practitioner noted that Plaintiff was stable and doing well. *Id.* at 357, 359, 362. Plaintiff was diagnosed with ADHD, episodic mood disorder, depressive disorder, unspecified disturbance of conduct, and anxiety state, and his medications were continued. *Id.* at 357, 359, 361.

The IEP put in place for Plaintiff was continued through the twelfth grade. Tr. at 365. Plaintiff's IEP noted that he exhibited behavior that impeded his learning or the learning of others. *Id.* at 366. Plaintiff's reading comprehension skills measured in the lower end of the "low average range." *Id.* at 373. On December 22, 2015, Plaintiff underwent an IQ test, performed by Collin A. Myer, Ph.D., and received a verbal comprehension score of seventy-eight, a perceptual reasoning score of seventy-three, a working memory score of sixty-six, and a full-scale score of sixty-six.[3] *Id.* at 393-99. Dr. Myers opined that Plaintiff: had an affective/mood disorder; would have poor or no ability to maintain attention for a two-hour segment; would have issues with responding appropriately to changes in a routine work setting and handling normal work stress; and would be off-task seven to ten percent of a normal work

---

[3]Plaintiff's evaluation with Dr. Myers occurred after his hearing before the ALJ. *See* Tr. at 36.

day.  *Id.*  Additionally, Dr. Myers opined that Plaintiff met Listing 12.04A, B, and C, due to his impairments, and that he met Listing 12.05C, and D due to his IQ scores.  *Id.* at 390-91.

### B. Testimonial Evidence

A hearing was held on December 4, 2015, with Plaintiff, his attorney, a vocational expert, and his mother present.  Tr. at 33, 35.  On examination by the ALJ, Plaintiff testified that he was working on obtaining his driver's license and that a friend was helping him study for the test.  *Id.* at 38-39.  Continuing, Plaintiff stated that he had worked at Marc's for a week as part of a "job evaluation with DVR," and that he liked the job.  *Id.* at 39.  Plaintiff also stated that Marc's wanted him back and that he hoped to return to work at the store.  *Id.* at 39-40.  When asked about his job duties, Plaintiff indicated that he stocked the shelves, checked prices, and "stuff like that."  *Id.* at 40.

Next, Plaintiff testified that he graduated high school with an IEP.  Tr. at 40.  Plaintiff stated that he did not think that he would be accepted to any colleges, so he did not apply.  *Id.*  Continuing, Plaintiff stated that he had worked at Blossom Music Center the prior summer and that it was his first job.  *Id.* at 41.  Plaintiff indicated that he liked the job, but that hours were "harsh" as he often had to work until 4:00 A.M., and that he would work eighteen hours on days when there were busy concerts.  *Id.*  When asked about his tasks at this job, Plaintiff stated that he cleaned the bathrooms and performed some maintenance.  *Id.* at 41-42.  The ALJ then asked Plaintiff if he thought he could work, to which Plaintiff responded "I think so."  *Id.* at 42.  Plaintiff also indicated that he thought he could work forty hours per week.  *Id.* at 43.  Plaintiff further stated that he did not think he had any mental or physical condition that would prevent him from working.  *Id.*

The ALJ then asked Plaintiff how his medications were working and Plaintiff responded that the medications were working "really good" and that they controlled his symptoms.  Tr. at 43.  Plaintiff testified that he had three friends and that he spent time with them playing video games at his house.  *Id.* at 43-44.  Continuing, Plaintiff expressed that he wanted to start counseling with Dr. Myers and that he felt it would help his "anger and stuff."  *Id.* at 45.  Plaintiff stated that his medication was controlling his anger, but that "every now and then [he]

need[ed] somebody to talk to." *Id.* When asked about his interactions with others while at Blossom Music Center, Plaintiff testified that he got along fine with his coworkers and supervisors, and that he did interact with the general public and did not have problems being around the crowds. *Id.* at 46. Plaintiff then stated that he helped around the house when asked and that he: cleaned his room; took out the trash; put away groceries; and made fried eggs for himself. *Id.* at 46.

Next, Plaintiff was examined by his attorney. Tr. at 47. Plaintiff testified that he was nervous to take a driver's license test because he had crashed his mother's car into a tree. *Id.* Continuing, Plaintiff stated that he had worked full days at Marc's. *Id.* Plaintiff testified that he could use the microwave and that while he only cooked eggs on the stove-top, he could cook if he had a recipe. *Id.* at 48. When asked whether he needed reminders, Plaintiff stated that he did need reminders, but not about his hygiene. *Id.* at 49. Plaintiff testified that he had a dog that he cared for with his mother, and that they took turns walking the dog. *Id.*

Continuing, Plaintiff stated that he had seen Dr. Myers once or twice, and that he had treated with Holly Berchin (the nurse practitioner discussed above) "since like kindergarten." Tr. at 49-50. Plaintiff testified that there were times when he was really mad and that it was "usually just like really mad and then feeling bad instantly." *Id.* at 50. When asked about the frequency of these incidents, Plaintiff stated that he had "nailed it down to about like once or twice every like two months" and the incidents did not occur very often. *Id.* Plaintiff stated that the incidents used to happen all the time and that he did not know what happened to reduce the number of incidents, but stated that he "guess[ed] [he] just grew out of it or something." *Id.* at 51. When asked about punching holes in the wall, Plaintiff testified that he had punched a hole in a wall a few weeks prior to the hearing, but added that he had not had an incident where he had gotten really angry in years. *Id.*

When asked about his friends, Plaintiff stated that he could go to the mall with his friends and that he would like to have more friends. Tr. at 52. Plaintiff's attorney asked what type of situation with his friends would make him uncomfortable, and Plaintiff responded that a situation where drugs were involved would make him uncomfortable. *Id.* Continuing, Plaintiff testified

-6-

that being in public did not cause him to become upset and that he thought he handled confrontations in the workplace well.  *DI.* at 53.

After Plaintiff's attorney examined Plaintiff, Plaintiff's mother, Tanya Beck, was called as a witness and examined by Plaintiff's attorney.  Tr. at 55.  Ms. Beck testified that Plaintiff was overly optimistic about his abilities and had childish thoughts.  *Id.* at 56-57.   Continuing, Ms. Beck testified that Plaintiff was coming out of his shell as he got older and that she thought working twenty hours a week at Marc's would be good for him, although she stated that she thought he could work more hours depending on the job duties.  *Id.* at 58-59.  The ALJ asked Ms. Beck about the duration of Plaintiff's incidents, and she stated that the incidents usually lasted less than one minute and the remorse process lasted about an hour.  *Id.* at 61-62.  When asked by the ALJ whether she thought Plaintiff could work a full-time job, Ms. Beck testified that she hoped that he could but worried about him getting into legal trouble if he had an incident at work.  *Id.* at 64.  Continuing, Ms. Beck stated that she supposed that Plaintiff could work a full-time job if he was on his medication.  *Id.* at 65.  Following the examination of Ms. Beck, the ALJ examined the VE and then concluded the hearing.[4]  *Id.* at 67-74.

## III.    RELEVANT PORTIONS OF THE ALJ'S DECISION

Following the hearing, the ALJ issued a decision on February 16, 2016.  Tr. at 10.  The ALJ found that Plaintiff attained the age of eighteen on April 20, 2014, and was eligible for SSI benefits as a child for the month preceding the month in which he attained age eighteen.  *Id.* at 15. Continuing, the ALJ stated that Plaintiff was notified that he was no longer disabled as of July 1, 2014, based on the redetermination of disability under the rules for adults who file new applications.  *Id.*  The ALJ then determined that since July 1, 2014, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

After consideration of the record, that ALJ found that since July 1, 2014, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with

---

[4]Plaintiff does not take issue with the testimony offered by the ALJ.  ECF Dkt. #12.  Accordingly, the undersigned does not detail the VE's testimony herein.

the following non-exertional limitations: simple, routine, and repetitive tasks, but not at a production rate (*e.g.*, assembly line work); frequent interaction with supervisors, coworkers, and the public; routine workplace changes; and absent from work one day per month. Tr. at 18. The ALJ then indicated that Plaintiff had no past relevant work. *Id.* at 26. Continuing, the ALJ stated that Plaintiff was a younger individual, had at least a high school education, and was able to communicate in English. Tr. at 27. The ALJ then indicated that the transferability of job skills was not an issue because Plaintiff did not have past relevant work. *Id.* Next, the ALJ found that, since July 1, 2014, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ determined that Plaintiff's disability ended on July 1, 2014, and Plaintiff had not become disabled again since that date. *Id.* at 28.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### V.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citations omitted).

### **VI.    LAW AND ANALYSIS**

Plaintiff asserts that the ALJ failed to appropriately analyze Listing 12.05.[5] ECF Dkt. #12 at 5-9. First, Plaintiff claims that the ALJ's analysis of Listing 12.05C found that he did not have deficits in adaptive functioning because "[Plaintiff] is capable of independently attending to his personal needs, and requires no assistance using the bathroom, dressing, eating, or bathing." *Id.* at 6 (quoting Tr. at 18). Plaintiff concedes these points, but claims that the ALJ skipped over "other more obvious and relevant deficits Plaintiff has." *Id.* at 6. Continuing, Plaintiff asserts that the ALJ's finding is not supported by substantial evidence because Plaintiff: lives in a controlled environment at home; has limited interactions with friends and the general public; and still experienced bipolar episodic outbursts. *Id.* Plaintiff states that: his mother does the majority of the chores at home; he still had episodes of anger and aggression, such as the one that led him to punch a hole in the wall; he crashed into a tree on his first attempt to drive; and he has limited social interactions as he only played video games with friends and had little to no outside contact. *Id.*

Additionally, Plaintiff stated that he required an IEP and accommodations to graduate, the school noted his issues with attention and concentration, and he performed poorly in school. ECF Dkt. #12 at 7. Plaintiff then indicates that the most significant deficit in adaptive functioning is his social skills, and that he: wears headphones while in public; has issues staying on task and focusing on work he is assigned; and preferred to be secluded and avoid group activities. *Id.* Continuing, Plaintiff asserts that the ALJ's reasons for finding no deficits in adaptive functioning are based on a review of "only the extreme end of examples of such deficits." *Id.*

Plaintiff then briefly asserts that the ALJ's finding regarding Listing 12.05C directly conflicts with the other findings in the decision, specifically at step two and step four, apparently arguing that the ALJ's findings at these steps satisfy the requirements for Listing 12.05C because

---

[5]The ALJ's determination of whether Plaintiff met Listing 12.05 is subject to the substantial evidence standard of review, as discussed above.

they constitute the finding of severe impairments. ECF Dkt. #12 at 8. Next, Plaintiff briefly avers that the ALJ's conclusion that Plaintiff did not have a valid verbal, performance, or full-scale IQ score of sixty through seventy is directly contradicted by the December 22, 2015, IQ score assigned by Dr. Myers. *Id.* at 9. Plaintiff states that "[w]hile the ALJ gave Dr. Myers' opinion less than great weight, [the ALJ] does not refute or contest the validity of the IQ score." *Id.*

Defendant contends that Plaintiff has not demonstrated that his cognitive impairment met Listing 12.05C. ECF Dkt. #13 at 9. After discussing the requirements of Listing 12.05, Defendant properly summarized the requirements of Listing 12.05C as follows:

> Listing 12.05C requires: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) another physical or mental impairment imposing an additional and significant work-related limitation or function.

*Id.* at 11 (citing *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (internal citation omitted)).

Defendant then asserts that substantial evidence supports the ALJ's finding that Plaintiff did not have sufficient deficits in adaptive functioning and that the ALJ properly found that Plaintiff's adaptive functioning was more consistent with intellectual borderline functioning. ECF Dkt. #13 at 11. Specifically, Defendant states that, in terms of daily living skills, Plaintiff: attended and graduated from high school; did homework; cleaned his room; took out trash; put groceries away; made simple meals and could follow a recipe; went outside daily; helped care for the family pet; shopped in stores; used a computer; handled his own personal care without reminders; and played video games with his friends. *Id.* at 12 (citing Tr. at 16, 18, 22, 43-44, 46, 48-49, 201-205, 364).

Regarding Plaintiff's social skills, Defendant states that he testified that his medication had worked "really good" and controlled his symptoms, including his anger. ECF Dkt. #13 at 12. Defendant states that the treatment notes confirm that Plaintiff managed to control his anger with medication. *Id.* After acknowledging the incident in September 2014 when Plaintiff punched a wall, Defendant states that: Plaintiff denied behavioral concerns and was noted to be

-11-

doing well with his peer and family relationships, including getting out with friends frequently; the mental healthcare provider frequently observed that Plaintiff's mood was stable and he was doing well; Plaintiff consistently presented at his appointments as cooperative and with an euthymic mood and full affect; Plaintiff did not display any significant behavioral problems in high school; Plaintiff testified that he had "loved the job" at Marc's and that the store wanted him back; Plaintiff performed well at Blossom Music Center and did not have a problem with crowds; and, notably, Plaintiff testified that he believed he could work forty hours per week. *Id* at 13-14. Defendant contends that this evidence constitutes substantial evidence for the ALJ's determination that Plaintiff did not have the deficits in adaptive functioning needed to meet Listing 12.05C. *Id.* at 14.

Further, Defendant notes that it does not appear that Plaintiff ever received a diagnosis of mental retardation, but was instead diagnosed with borderline intellectual functioning or other mental impairments, including an affective/mood disorder. ECF Dkt. #13 at 15. Defendant then states that the evidence cited by Plaintiff in his brief constitutes nothing more than a disagreement with how the ALJ weighed the evidence, which is not a proper basis for remand. *Id.* at 15-16. Additionally, Defendant states that Plaintiff exaggerates the extent of his social limitations, citing as an example Plaintiff's claim in his brief that he wore headphones in public despite his testimony denying that he was nervous or upset when in public. *Id.* at 17. Defendant also states that Plaintiff's treatment notes state that he frequently went out with friends. *Id.* Regarding Plaintiff's IEP, Defendant correctly states that it is well established in the Sixth Circuit that a claimant's participation in special education classes does not establish the deficits in adaptive functioning needed to meet Listing 12.05C. *Id.* at 18 (citing *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009); *Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012)).

Next, Defendant asserts that Plaintiff cannot demonstrate that he had a valid IQ score below seventy. ECF Dkt. #13 at 19. Defendant states that ALJ cited the IQ score of seventy-one and gave little weight to Dr. Myers assigned IQ score of sixty-six. Continuing, Defendant contends that the ALJ never found Dr. Myers' IQ scores to be valid, despite Plaintiff's assertion

-12-

that the ALJ did make such a finding, as shown by the ALJ's assignment of little weight to Dr. Myers' opinion. *Id.* Defendant states that an ALJ may reject IQ scores that are inconsistent with the record. *Id.* at 20 (citing *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 434 (6th Cir. 2016); *Baker v. Comm'r of Soc. Sec.*, 21 F. App'x 313, 315 (6th Cir. 2001); *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)). According to Defendant, the ALJ had good reasons for not accepting Dr. Myers' opinion as to Plaintiff's IQ.[6] *Id.* at 19-22.

Plaintiff's arguments are without merit. As stated above, the substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole*, 661 F.3d at 937. Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers,* 486 F.3d at 234. Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "zone of choice within which [an ALJ] can act without the fear of court interference." *Buxton*, 246 F.3d at 773.

When addressing whether Plaintiff met a listed impairment, including Listing 12.05, the ALJ found that Plaintiff had no more than a mild restriction in activities of daily living, citing that Plaintiff: went to school, did his homework, and had free time in the evening; reported no problems handling his personal care; maintained his personal hygiene independently and played video games in his free time; cleaned his room and took out the trash; made his own food and used the microwave; had no problems handling his personal care and took care of a pet that he walked, fed, and played with; went outside daily by walking, riding in a car, or riding his bike;

---

[6]At the end of the response brief, Defendant also concedes that the ALJ should have found that Plaintiff had a mental impairment that imposed an additional and significant work-related functional limitation, but contends that the error was harmless because Plaintiff cannot demonstrate that he met the first two elements of Listing 12.05C - deficits in adaptive functioning and a valid IQ score below seventy. ECF Dkt. #13 at 23, n. 3. Plaintiff states that "[w]hile Defendant argues harmless error, the fact remains unchanged that the ALJ issued a poorly written decision and made findings without evidentiary support. ECF Dkt. #14 at 4. The undersigned agrees that Defendant's error was harmless as Plaintiff, for the reasons stated herein, has failed to show that he meets the other requirements of Listing 12.05C.

-13-

and shopped on the computer or in stores for clothes and video games, but generally did not handle his own money. Tr. at 16.

Regarding Plaintiff's social functioning, the ALJ found that Plaintiff had no more than mild limitations, citing that Plaintiff: had three friends that he played video games within his free time; testified that he did not get nervous in public and managed his anger by listening to music; had no problems getting along with family, friends, neighbors, or authority figures; was doing well in peer and family relationships, and was getting out with friends frequently; managed to control his anger outbursts and mood swings with medication; went to school on a daily basis and played video games with his friends weekly; and was well-mannered, quiet, and reserved, with no behavioral problems. *Id.*

As for concentration, persistence, or pace, the ALJ found that Plaintiff had moderate limitations, citing that Plaintiff: noted that the duration of his attention span depends on the subject and he can follow written and spoken instructions; testified that he had no problems during his past work experiences and can focus on video games for at least an hour; was able to focus all day at school and to do his homework; experienced stress and did not like change; and had special accommodations to allow for small group testing and extended time, however, he graduated from high school. Tr. at 17. The ALJ also noted that Plaintiff had not had any episodes of decompensation. *Id.* Further, the ALJ expressly addressed Listing 12.05C and stated that the criteria of this listing are not met because Plaintiff did not have a valid verbal, performance, or full-scale IQ score of sixty to seventy. Tr. at 18. The ALJ indicated that Plaintiff did have a full-scale IQ score of seventy-one. *Id.*

The Court is required to affirm the ALJ's decision if it is supported by substantial evidence that a reasonable mind might accept as adequate to support that decision. " *Cole*, 661 F.3d at 937. Here, the ALJ cited evidence supporting the conclusion that Plaintiff did not satisfy the requirements of Listing 12.05C. In an attempt to show evidence that Plaintiff experienced deficits in adaptive functioning, as required by Listing 12.05C, he cites several pieces of evidence that constitute evidence that is on the extreme end of the spectrum of evidence contained in the record. This attempt by Plaintiff fails to overcome the many reasons the ALJ

cited supporting the decision that Plaintiff does not meet the requirements of Listing 12.05C. Moreover, the characterization of Plaintiff's impairments in his brief is undermined by his hearing testimony, as discussed above, during which Plaintiff frequently stated that his impairments did not cause a substantial impact in his ability to perform various activities and maintain relationships with family and friends. Additionally, it was Defendant's opinion at the hearing that he was capable of working and his mother, despite expressing concern of Plaintiff's ability to discuss his impairments accurately, also believed that Plaintiff could work. *See* Tr. at 42-43, 64.

The attempt made by Plaintiff to claim that the ALJ's decision is inconsistent also fails. Plaintiff takes issue with step two and step four of the sequential evaluation. It appears that Plaintiff states that the ALJ found at step two that Plaintiff had severe impairments, but then fails to find Plaintiff disabled. ECF Dkt. #12 at 8. However, nowhere in the rules, regulations, or case law cited by Plaintiff does it state that the finding of a severe impairment means that the ALJ was required to find Plaintiff disabled. *See id.* As for step four, Plaintiff appears to claim that the ALJ's RFC finding that Plaintiff had some limitations was the equivalent of finding severe impairments, and thus a finding of disability was required. Again, no where in the rules, regulations, or case law cited by Plaintiff does it state that the finding of a severe impairment means that the ALJ was required to find Plaintiff disabled. The ALJ's finding that Plaintiff "has no physical condition and any additional mental impairment that caused no more than mild to moderate limitations" is not inconsistent with the ALJ's finding that Plaintiff had severe impairments, and Plaintiff fails to cite any basis for a finding to the contrary.

Finally, Plaintiff takes issue with the ALJ's finding that he did not have an IQ score below seventy. Tr. ECF Dkt. #12 at 9. Plaintiff cites Dr. Myers' opinion as contrary to the ALJ's assertion since Dr. Myers assigned an IQ score of sixty-six. Despite Plaintiff's argument, the ALJ did address the opinion of Dr. Myers and assigned it little weight after a lengthy discussion of the opinion. Tr. at 25-26. The ALJ found that Dr Myers' opinion was: inconsistent with the record as a whole, including treatment notes and reports made by Plaintiff and his mother to treating sources; devoid of the support of treatment notes from Dr. Myers;

-15-

inconsistent with the objective evidence that indicated Plaintiff frequently interacted with peers and had no behavioral problems while in high school; inconsistent with reports from Plaintiff and his mother that he got along with friends, family, and authority figures; inconsistent with Plaintiff's testimony that he was not nervous, had no problems in public, and had no conflicts with others during jobs situations; inconsistent with reports from Plaintiff and his mother that he maintained attention and concentration when taking his medication to a sufficient degree to do homework and play video games; unclear as to whether Plaintiff's treatment with Dr. Myers' occurred over a period months, weeks, or days prior to the issuance of the opinion; and suspect of being biased for purposes of finding Plaintiff disabled since it was issued subsequent to the hearing. *Id.* Plaintiff wholly fails to address the ALJ's reasons for discounting Dr. Myers' opinion, instead stating "[w]hile the ALJ gave Dr. Myers' opinion less than controlling weight, he does not refute or contest the validity of the IQ score." ECF Dkt. #12 at 9. The ALJ did not expressly address the validity of the IQ score Dr. Myers assigned, but instead addressed the validity of Dr. Myers' opinion as a whole, thereby including the IQ scores assigned in the opinion, and assigned the opinion little weight. Accordingly, the ALJ was under no obligation to accept the IQ scores assigned by Dr. Myers. For these reasons, the undersigned recommends that the Court find that the ALJ's decision is based on substantial evidence.

## **VII.** **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: July 24, 2018 */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).